UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 29, 2017
```

--------------------------------------------------------------------X
:
BROOKLYN DOWNTOWN HOTEL LLC, *et al.*,                      :
                                                           :          15 Civ. 1578 (PAC)
                        *Plaintiffs*,                      :
                                                           :
        -*against*-                                        :          <u>**OPINION & ORDER**</u>
                                                           :
NEW YORK HOTEL AND MOTEL TRADES                            :
COUNCIL, AFL-CIO *and* INTERSTATE HOTELS &                 :
RESORTS, INC.,                                             :
                                                           :
                        *Defendants*.                      :
                                                           :
--------------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

        Plaintiffs seek a declaratory judgment against defendant the New York Hotel and Motel

Trades Council, AFL-CIO (the "Hotel Workers Union"), that Plaintiffs are not bound by the

provisions of a collective bargaining agreement—the Industry Wide Agreement ("IWA")—and

that the IWA is not enforceable as violative of the National Labor Relations Act ("NLRA") and

public policy (the "Contract Claims").  Plaintiffs also claim that the agreements, including the

IWA, and actions of defendants the Hotel Workers Union and Interstate Hotels & Resorts, Inc.

("Interstate,"[1] and together with the Hotel Workers Union, "Defendants") violate the Sherman

Act and the New York State Donnelly Act (the "Antitrust Claims").  Each Defendant submitted a

motion to dismiss the Amended Complaint.  The Court heard oral argument on the motions on

February 1, 2017.

        For the reasons set forth below, the Court (1) grants Defendants' motions to dismiss with

---

[1] For purposes of this decision, and consistent with Plaintiffs' allegations in the Amended Complaint, Interstate
refers to both Interstate Management Company, LLC and Interstate Hotels & Resorts, Inc.

respect to the Antitrust Claims, and (2) denies the Hotel Workers Union's motion to dismiss with respect to the Contract Claims.

## BACKGROUND[2]

### I.      Relevant Actors

Plaintiffs are a web of 40 entities that own eight hotels in New York City and have plans to open four more in the near future.  Am. Compl. ¶¶ 11–22.  Plaintiffs' ultimate owners are "a combination of members of the Lam family or trusts whose beneficiaries are members of Lam family heirs and others."  *Id.* ¶ 24.

Non-party Chelsea Grand LLC ("Chelsea") owns the Four Points by Sheraton hotel located on West 25th Street in Manhattan ("Four Points Hotel"), and Chelsea, in turn, is owned by members of the Lam family, including John Lam.  *Id.* ¶ 25

The Hotel Workers Union represents approximately 32,000 hotel workers in New York City and elsewhere.  *Id.* ¶ 26.  It has contracts with more than 300 hotels, including hotels in each of New York City's five boroughs.  *Id.*

Interstate provides management services for hotels and manages approximately 450 hotels, and 83,000 rooms worldwide.  *Id.* ¶ 27.

Non-party Hotel Association of New York City, Inc. ("HANYC") is an association whose "members include more than 270 hotels in New York City, representing more than 75,000 rooms and approximately 50,000 hotel employees."  *Id.* ¶ 28.

---

[2] The Court takes as true the allegations in Plaintiffs' Amended Complaint.  *See Rothman v. Gregor*, 220 F.3d 81, 91 (2d Cir. 2000).  The Court also considers the exhibits attached to the Amended Complaint and "any statements or documents incorporated in it by reference," as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit" and "matters of which judicial notice may be taken."  *See id.* at 88; *Kolchinsky v. Moody's Corp.*, 10 Civ. 6840 (PAC), 2012 WL 639162, at *4 (S.D.N.Y. Feb. 28, 2012).

## II.     Relevant Facts

The Contract Claims here begin with the prior decisions in *Chelsea Grand, LLC v. New York Hotel & Motel Trades Council, AFL-CIO* ("*Chelsea I*").  *See* 07 Civ. 2614 (PAC), 2014 WL 4813028 (S.D.N.Y. Sept. 29, 2014), *aff'd* 629 F. App'x 152 (2d Cir. 2015).  At issue in *Chelsea I* was whether the Hotel Workers Union could organize Chelsea's Four Points Hotel based on agreements that the Hotel Workers Union had entered into with Interstate, Chelsea's managing agent.  Chelsea argued that it had advised Interstate that it did not want to be unionized, but Chelsea was ultimately held to be bound to certain provisions of the IWA.  The Court summarizes below relevant facts from the Amended Complaint as well as from the two decisions in *Chelsea I.*

### A.     The IWA

There are two provisions in the IWA—a collective bargaining agreement (renewed most relevantly in 2001, 2006, and 2012), between the Hotel Workers Union and HANYC—that are at the heart of the parties' dispute.  *See Chelsea I*, 2014 WL 4813028, at *2; Am. Compl. ¶¶ 1, 31, 37.  The first provision is a card check and neutrality clause, set forth in Article 60 and Addendum IV of the IWA ("CCN Clause").  Am. Compl. ¶ 31; Am Compl. Ex. 1 at 71, 111–15.  The CCN Clause in the 2001 IWA obligates signatories that "acquire[] an ownership, management or control interest" in a hotel "to provide the Union access to employees, to permit the Union to organize employees through a card check process, and to remain neutral throughout the union organizing process."  *See* Am. Compl. Ex. 1 at 111; Am. Compl. ¶ 31; *Chelsea I*, 2014 WL 4813028, at *2.

The second provision is an accretion clause ("Accretion Clause").  As set forth in the 2001 IWA, the Accretion Clause provides that IWA signatories

3

> agree[] to the accretion of any and all hotel and concessionaire properties which come to be owned and/or managed in the New York City area to the bargaining unit(s) presently or hereafter covered by the Industry Wide Agreement or any successor collective bargaining agreement thereto, and that all of the terms and conditions set forth in the Industry Wide Agreement or its successor shall be immediately applicable to the accreted bargaining unit(s).

Am. Compl. Ex. 1 at 70–71; *see* Am. Compl. ¶ 33.  In 2012, the IWA was renewed, and the Accretion Clause was modified to extend to "affiliated and related entities" of parties to the IWA.  Am. Compl. ¶ 38; Am. Compl. Ex. 3 at 48.

### B.    *Chelsea I*

The *Chelsea I* action began after John Lam decided to pursue a new venture in the hotel industry.  2014 WL 4813028, at *3.  Mr. Lam headed the Lam Group, a closely held family enterprise that owned Chelsea.  *Id.*  He sought a franchise agreement with Sheraton Hotels, and as a condition to obtaining a Sheraton franchise, Mr. Lam agreed to use Interstate as its managing agent.  *Id.*  In February 2003, Chelsea entered into a Hotel Management Agreement (the "HMA") with Interstate for Interstate to be the managing agent of Chelsea's hotel.  *Id.*

In 2004, Interstate signed a memorandum of agreement with the Hotel Workers Union ("2004 MOA").  *Chelsea I*, 2014 WL 4813028, at *6.  The 2004 MOA took retroactive effect on July 1, 2001 but had no expiration date.  *Id.* at *6–7.  In it, Interstate "agree[d] to be bound by the Accretion and Card Count/Neutrality provisions of the Memorandum of Understanding dated June 15, 2000 between the Union and the Hotel Association of New York Inc."[3]  *Id.* at *6. Chelsea has always contended that Interstate entered into the 2004 MOA without Chelsea's knowledge, and despite a provision in the HMA stating Chelsea's desire to remain non-union. *See* Am. Compl. ¶ 3.

---

[3] The Accretion and CCN Clauses of the 2000 Memorandum of Understanding were incorporated into the 2001 IWA as Article 60 and Addendum IV.

In early 2007, the Hotel Workers Union sought to organize the Four Points Hotel pursuant to the CCN Clause provided for in the 2004 MOA. *Chelsea I*, 629 F. App'x at 153. Chelsea resisted, and the Hotel Workers Union commenced an arbitration proceeding against Chelsea and Interstate before the Impartial Chairman ("IC"). *Id.* The IC issued two awards finding that Chelsea violated its obligations under the 2004 MOA and the substantive IWA provisions incorporated by it. *Id.* The IC reasoned that Chelsea was bound to the 2004 MOA because it was a joint employer and principal to Interstate. *Id.*

Chelsea then challenged the arbitral proceeding pursuant to New York Civil Practice Law and Rules Article 75. *Chelsea I*, 2014 WL 4813028, at *1. The action was removed to federal court, and this Court confirmed the IC's award, finding that Interstate and Chelsea were joint employers, and that Chelsea was Interstate's principal. *Id.* at *1, 11–13. Chelsea appealed, and the Second Circuit affirmed, explaining that the 2004 MOA obligated Chelsea to comply with the CCN Clause set forth in the 2001 IWA. *Chelsea I*, 629 F. App'x at 155.

### C.     The Instant Action

After the Court's decision in *Chelsea I* on September 29, 2014, the Hotel Workers Union sent a series of notices of their intent to organize their hotels pursuant to Article 60 and Addendum IV of the IWA. *See* Am. Compl. ¶ 53; Exhibit 13 to the Declaration of Barry N. Saltzman ("Saltzman Decl."). The Hotel Workers Union had previously sent a series of similar notices on August 8, 2008, while *Chelsea I* was pending, but Plaintiffs had not complied. *See* Saltzman Decl. Exhibit 13. Plaintiffs commenced this action on October 16, 2014.

## ANALYSIS

## I.     Legal Standards

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the

factual allegations of a complaint as true and draws all inferences in the plaintiff's favor.  *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 154 (2d Cir. 2006).  The Court is not, however, required to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, the factual allegations must "state a claim to relief that is plausible on its face."  *Id.*  In antitrust actions, it is "improper to 'assume that the [plaintiff] can prove facts that it has not alleged . . . .'"  *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).

## II.      Contract Claims (Claims I–III)

In Claims I and II, Plaintiffs seek a declaratory judgment that they are not bound by the 2001, 2006, or 2012 IWAs, or any of their provisions.  Plaintiffs also seek in Claim III a declaratory judgment that the IWAs are not enforceable as violative of the NLRA and public policy.  The Hotel Workers Union argues that these claims must be dismissed because (1) they are time barred, and (2) Plaintiffs fail to allege a violation of federal labor law or public policy.  The Court does not agree.

### A.      Statute of Limitations

There is no limitations period governing a declaratory judgment action; instead the limitations period is the same as "the claim on which the relief is based."  *See Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963).  Statutes of limitations "do not normally run against a defense."  *See id.* at 549 n.3.

Plaintiffs' claims for declaratory relief are, in essence, the defenses Plaintiffs would assert, if the Hotel Workers Union brought an action to enforce the IWA or its provisions against

them.  Thus, the claim on which the requested relief is based is the Hotel Workers Union's

assertion of a right to organize Plaintiffs.  The Hotel Workers Union does not concede that it

would be unable to bring an action to enforce the IWA or its provisions against Plaintiffs, and so

its contention that the Contract Claims are time barred is unavailing.

### B.   Violations of Federal Labor Law or Public Policy

The Hotel Workers Union submits that dismissal of the Contract Claims is warranted

because Plaintiffs fail to allege a violation of federal labor law or public policy.  As an initial

matter, the Court notes that while Claim III seeks a declaratory judgment that the IWAs are

unenforceable as violative of the NLRA and public policy, Claims I and II are for a declaratory

judgment that Plaintiffs are not bound by the 2001, 2006, or 2012 IWAs, or any of their

provisions.  The Hotel Workers Union takes the position that Plaintiffs' failure to allege a

violation of federal labor law or public policy somehow dooms Claims I and II, as well as Claim

III.  *See* Hotel Workers Union Reply at 1–3.  But the Amended Complaint plausibly alleges other

reasons—not addressed by the Hotel Workers Union—for why the IWA agreements and their

provisions do not bind Plaintiffs, including that there was no offer, no acceptance, and no

consideration.  Am. Compl. ¶¶ 66–78.  Consequently, even if dismissal of Claim III were

warranted because Plaintiffs failed to allege a violation of federal labor law or public policy,

Claims I and II would still survive.

Plaintiffs advance three arguments for their allegations of a violation of federal labor law

or public policy:  (i) the neutrality provision of the CCN Clause impermissibly purports to waive

or restrict Plaintiffs' First Amendment rights by requiring Plaintiffs' neutrality while the Hotel

Workers Union tries to organize through the card check procedure; (ii) application of the

Accretion Clause may constitute a violation of pre-recognition bargaining; and (iii) the Hotel

Workers Union's attempts to enforce the CCN Clause could violate the NLRA's prohibition against imposing permissive subjects of bargaining without the other party's consent.  The Court agrees with Plaintiffs' third argument, but disagrees with Plaintiffs' first and second arguments.

### 1.  Waiver of First Amendment Rights

Plaintiffs argue that the neutrality provision impermissibly purports to waive, with no limitation, their First Amendment rights by forbidding them from speaking about unionization at their hotels.  They urge that such a waiver is enforceable only if it is "narrowly tailored."  Opp'n at 14.  While this may be true where there is government action, *see, e.g.*, *Leonard v. Clark*, 12 F.3d 885, 891 (9th Cir. 1994), Plaintiffs allege no government action here.  They offer no indication of how an agreement between non-government actors implicates the First Amendment, nor has the Court located any case suggesting as much.  *Cf. Loce v. Time Warner Entm't Advance/Newhouse P'ship*, 191 F.3d 256, 266 (2d Cir. 1999) ("The First Amendment applies only to state actors.").  This argument is unavailing.

### 2.  Pre-Recognition Bargaining

"Section 9 of the NLRA requires that a majority of a bargaining unit select a representative before that representative can bind the unit to substantive terms and conditions." *Chelsea I*, 629 F. App'x at 156.  The Second Circuit determined in *Chelsea I* that application of the CCN Clause did not violate the NLRA's ban on pre-recognition bargaining because the card check and neutrality provisions adopted by the 2004 MOA were procedural guarantees, not substantive terms or conditions.  *Id.*  Plaintiffs try to escape the Second Circuit's clear holding by suggesting that "the Second Circuit did not address the viral spread of Card Check/Neutrality to numerous entities having no relationship with Interstate."  Opp'n at 15.  Application of a disparaging label does not mandate a different result.

Plaintiffs also argue that the Second Circuit did not address whether the Accretion Clause would violate the pre-recognition bargaining ban, explaining that "the plain terms of the IWA allow for the possibility that the Union will seek to impose all terms of the IWA against Plaintiffs." Opp'n at 15.  But Plaintiffs fail to allege that the Hotel Workers Union will seek to do so.  All actions that Plaintiffs allege the Hotel Workers Union has taken relate exclusively to the CCN Clause, not the Accretion Clause.  And at the February 1, 2017 hearing, the Hotel Workers Union's counsel confirmed that "[n]o one is contending that the substantive terms of the IWA apply here, the economic terms." *See* Tr. 20:8–18.  Plaintiffs' argument therefore is moot.

### 3.  Permissive Subjects of Bargaining

There are four parts to Plaintiffs' final argument:  (1) the CCN Clause is a permissive subject of bargaining; (2) clauses that are permissive subjects of bargaining expire at the same time as the agreement they are in; (3) the 2001 IWA expired in 2006; and (4) the NLRA prohibits imposition of permissive subjects of bargaining without the consent of the other party  Their argument then is that if the Hotel Workers Union claims that the source of Plaintiffs' contractual obligation to comply with the CCN Clause is the 2001 IWA, that would violate the NLRA.

The Hotel Workers Union attempts to foreclose Plaintiffs' argument by appearing to take the position that the 2004 MOA—and not the 2001 IWA—is the basis for application of the CCN Clause to Plaintiffs.  *See* Hotel Workers Union Reply Br. at 2–3.  But it is not at all clear that the Hotel Workers Union is in fact so constraining itself.  Absent the Hotel Workers Union's unambiguous avowal that it will not argue that the 2001 IWA is the source of Plaintiffs' contractual obligations, the Court cannot conclude that Plaintiffs' argument is moot.

Next, the Court agrees (and the Hotel Workers Union does not dispute) that the NLRA prohibits imposition of permissive subjects of bargaining without the consent of the other party, *see NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342, 349 (1958), and that clauses pertaining to permissive subjects of bargaining expire at the same time as the agreement they are in, *see Silverman v. Major League Baseball Player Relations Comm., Inc.*, 67 F.3d 1054, 1059 (2d Cir. 1995).  There is also no dispute that the 2001 IWA expired in 2006.  *See* Am. Compl. Ex. 1 at 68.

The final part of Plaintiffs' argument is that the CCN Clause is a permissive subject of bargaining.  The Hotel Workers Union contends that it is mandatory.  *See* Hotel Workers Union Br. at 20.  Mandatory subjects of bargaining relate to "wages, hours, and other terms and conditions of employment."  *See Wooster*, 356 U.S. at 349.  A provision can qualify as a mandatory bargaining subject if it has a "tangible effect[] on the wages and working conditions" of employees.  *See Clarett v. Nat'l Football League*, 369 F.3d 124, 140 (2d Cir. 2004) (Sotomayor, J.).  For example, in *Clarett*, the Second Circuit found that NFL draft eligibility rules were a mandatory subject of bargaining because elimination of those rules could alter assumptions underlying the collective bargaining agreement, such as the "complex scheme by which individual salaries in the NFL are set."  *See id.*

Here, there is nothing to suggest that elimination of the CCN Clause would alter assumptions underlying the IWA relating to wages, hours, or working conditions.  The Court therefore holds that the CCN Clause is a permissive subject of bargaining.  *See Pall Corp. v. NLRB*, 275 F.3d 116, 118 (D.C. Cir. 2002) ("[T]he manner by which a union may achieve recognition as the representative of employees outside the bargaining unit is not a mandatory

subject of bargaining."). Consequently, the Court concludes that Plaintiffs have stated a plausible claim to relief.

III.    **Antitrust Claims (Claims IV–VIII)**

Plaintiffs assert five claims that the Hotel Workers Union, Interstate, and HANYC's agreements relating to the IWA violate Sherman Act §§ 1 and 2, and the New York State Donnelly Act. The claims are premised on Plaintiffs' theory that the Hotel Workers Union, Interstate, HANYC, and possibly others, conspired to virally spread unionization, leading to a restraint of the market for the provision and purchase of clusters of hotel labor and management services. Defendants advance a host of arguments for why Plaintiffs fail to state claims that Defendants violated the Sherman Act and the New York State Donnelly Act. Two of Defendants' arguments are more than sufficient to dispose of Plaintiffs' claims. First, Plaintiffs' Donnelly Act claim is preempted. Next, there is a complete failure to adequately allege a product market, and so Plaintiffs' antitrust claims fail.

A.    **Preemption of Donnelly Act Claim (Claim VIII)**

Plaintiffs' Donnelly Act claim is preempted. "Because employee organization is central to federal labor policy and regulation of organizational procedures is comprehensive, federal law does not admit the use of state antitrust law to regulate union activity that is closely related to organizational goals." *Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 637 (1975).

Plaintiffs contend that their claim is not preempted because "the activity at issue is merely a peripheral or collateral concern of the labor laws." Opp'n at 47. They try to cast the activity at issue here as the "alleged restraint in the hotel management services market." *Id.* But that is the supposed effect of the activity at issue. The activity at issue is Defendants' alleged

conspiracy to virally spread unionization, an activity that is clearly closely related to organizational goals.

### B.    Product Market (Claims IV–VII)

"In order to survive a motion to dismiss, a claim under Sections 1 and 2 of the Sherman Act must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized." *Xerox Corp. v. Media Sciences Int'l, Inc.*, 511 F. Supp. 2d 372, 383 (S.D.N.Y. 2007). A product market is normally "composed of products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *Todd*, 275 F.3d at 201.

Plaintiffs argue that there are two relevant product markets at issue here: (i) the provision and purchase of a cluster of specified hotel labor services, and (ii) the provision and purchase of a cluster of specified hotel management services.[4] Am. Compl. ¶ 79. Different lines of services may be clustered together for purposes of defining a product market if the cluster has "economic significance well beyond the various products and services involved." *See United States v. Phillipsburg Nat'l Bank & Trust Co.*, 399 U.S. 350, 361 (1970). Where there are providers of the full line of services in an alleged cluster as well as providers of only a partial line of the services, it is inappropriate to treat the full line of services as a cluster if "buyers could and would respond to a price increase by a full line [provider] by shifting all or part of their business to partial line or single [service providers], or by making or providing the . . . service themselves." *See Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 354 (S.D.N.Y. 2009).

---

[4] Defendants highlight that the Amended Complaint appears to merge the two purported services clusters into one purported services cluster. Interstate Br. at 16–18. The Court agrees that the Amended Complaint is unclear in defining the clusters, but conducts its market analysis as though Plaintiffs properly alleged two services clusters.

### 1. Hotel Labor Services

The Amended Complaint is completely devoid of any allegation that there are providers of the full line of alleged hotel labor services.[5]  This alone warrants rejection of Plaintiffs' proposed hotel labor services cluster product market.  But even assuming that there are such providers, there still is no allegation that hotels ascribe any economic significance whatsoever to those providers.  Nothing in the Amended Complaint suggests that hotels prefer to use full line providers, as opposed to some combination of providers of a partial or single line.

Plaintiffs attempt to deflect by focusing on the IWA.  They argue, for example, that hotel industry participants recognize the product market for the hotel labor services in the alleged cluster because "[t]he IWA lists and classifies the cluster of hotel labor services into the same categories" set forth in the Amended Complaint.  *See* Am. Compl. ¶ 80.  But this says nothing about any market for or economic significance relating to providers of the full line of services. In short, given the total lack of allegations about providers of the so-called cluster of hotel labor services as well as any economic significance hotels might ascribe to such providers, Plaintiffs have not plausibly pleaded a product market for their alleged cluster of hotel labor services.

### 2. Hotel Management Services

With respect to the purported cluster of hotel management services, Plaintiffs at least allege the existence of one provider of their alleged full line of hotel management services— Interstate.  *See* Am. Compl. ¶ 80.  They go further and explain that the HMA states that the hotel management services alleged to constitute a cluster are "customarily performed" by management companies.  *Id.*  But Plaintiffs come up short once again because there is no allegation that the purported cluster of hotel management services has any economic significance for hotels.  There

---

[5] At the February 1, 2017 hearing, counsel for Plaintiffs conceded that hotel labor services "are provided by hotel employees," but stated that the Hotel Workers Union "is a facilitator or arranger" for those services. Tr. 7:9–21.

very well may be hotel management companies that only provide a partial or single line of the alleged cluster of services, and hotels may choose to purchase from them (or a combination of them) as opposed to providers of the full line. Consequently, Plaintiffs have not adequately alleged that their complement of hotel management services constitutes a cluster for product market definition purposes.

## CONCLUSION

Interstate's motion to dismiss all of Plaintiffs' claims against it (Claims IV–VIII) is granted. The Hotel Workers Union's motion to dismiss is granted with respect to Claims IV–VIII, and denied with respect to Claims I–III. The Clerk of Court is directed to close the motions at Docket 77 and 81.

Dated: New York, New York          SO ORDERED
       March 29, 2017

PAUL A. CROTTY
United States District Judge